IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TELEASHA WARREN, on behalf of AF, | ) | CASE NO. 3:09 CV 1453 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is the appeal under 42 U.S.C. § 1383c(a)(3) of Teleasha Warren, on behalf of her minor child, AF,[2] from the Commissioner's denial of her application for children's supplemental security income benefits.[3] The Administrative Law Judge ("ALJ"), whose decision to deny the application became the final decision of the Commissioner, found that AF had severe impairments consisting of asthma, platelet function defect, cognitive disorder, and ADHD.[4] The ALJ decided that these impairments – individually or collectively – did

---

[1] The parties have consented to my exercise of jurisdiction. ECF # 12.

[2] Under Local Rule 8.1(s)(2), minor children are to be identified only by initials.

[3] ECF # 1.

[4] Transcript ("Tr.") at 23.

not meet or medically equal various listings of Appendix 1 of the regulations.[5] He, therefore, determined that AF was not under a disability.[6]

In reaching that conclusion, the parties agree,[7] the ALJ did not specifically discuss if AF met or equaled the listing for childhood mental retardation set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.05(D), even though the record contains a full scale IQ score for AF between 60 and 70, as well as two individual scores of below 60. For the reasons that follow, I find that such discussion was required in this case, and so the matter should be remanded.

## Facts

The relevant facts are relatively straightforward. The record is clear that AF has not been diagnosed with mental retardation, nor did he seek benefits on the basis of being mentally retarded. The record also shows that AF was seen in 2006 by Thomas M. Evans, Ph.D.[8] Dr. Evans performed an evaluation of AF that included intelligence testing.[9] That testing established that AF had a Full Scale IQ score of 62, with a Verbal Comprehension Index Score (VCI) of 59 and Perceptual Reasoning Index Score (PRI) of

---

[5] *Id*.

[6] *Id*. at 31.

[7] *See*, ECF # 26 (Warren's brief) at 1; ECF # 27 (Commissioner's brief) at 1.

[8] Tr. at 482. Specifically, Dr. Evans administered the Wechsler Intelligence Test for Children - IV.

[9] *Id*.

53.[10] Noting the variance between the low subset scores noted above and higher scores for the Working Memory Index (83) and the Processing Speed Index (91), Dr. Evans suggested that the Full Scale IQ score might not be valid, but may, in fact, be an "underestimation of his true level of abilities."[11]

Against that background, the ALJ proceeded to render a decision that noted the presence of the full scale IQ score of 62, which the ALJ discounted as likely not valid and under-representative of AF's true ability.[12] The ALJ did not address the two IQ scores on particular subsets that were below 60.

While the decision here, as noted, did conclude that AF's full scale IQ score of 62 was likely invalid due to the wide disparity between individual subset scores, it did not address whether the two individual scores below 60 in various subsets met the listing for mental retardation contained at listing §§ 112.05(C) and (D), which provide in relevant part:

> § 112.05 Mental Retardation: Characterized by showing significantly subaverage general intellectual functioning with deficits in adaptive functioning. The required level of severity for this disorder is met when the requirements in A, B, C, D, E or F are satisfied.
>
> ....
>
> C. A valid verbal, performance, or full IQ score of 59 or less;
>
> OR

---

[10] *Id.* at 486.

[11] *Id*.

[12] *Id*. at 25.

> D. A valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function.

The ALJ then concluded with an analysis of whether AF had shown limitations in the six domains of functioning, finding no limitations in two domains and less than marked limitations in four others.[13] The ALJ determined that AF was not disabled.[14]

## Analysis

As stated earlier, § 112.05 sets forth the listing for mental retardation applicable to children. Mental retardation itself is described in the section as being "[c]haracterized by significantly subaverage intellectual functioning with deficits in adaptive functioning. The required level of severity for this disorder is met when the requirements in ... C [or] D ... are satisfied."[15] As detailed above, Subsection D provides that disability is established upon a valid verbal, performance or full scale IQ score of 60 through 70 plus a physical or mental impairment imposing an additional and significant limitation of function. Significantly, Subsection C allows for a finding of disability where there is a valid verbal, performance or full scale IQ score of 59 or less, without the requirement for any additional limitation of function.

---

[13] *Id.* at 26-31.

[14] *Id*. at 32.

[15] 20 C.F.R., Pt. 404, Subpt. P., App. 1§ 12.05.

-4-

In *Isham v. Astrue*[16] – a case which the parties here were given an opportunity to brief as to its applicability in this matter[17] – the court found that where the record contains an IQ score between 60 and 70, an ALJ's failure to "follow the procedural requirement of explaining in the narrative decision why a claimant with an IQ score under 70 does not have an impairment or combination of impairments that meet or equal the definition of mental retardation under § 12.05(C)[18] is grounds for remand."[19]

As *Isham* plainly notes, the requirement that the ALJ provide reasons as to why a claimant with an IQ score under 70 in the record does not meet or equal the listing for mental retardation is a mandatory procedural requirement.[20] Moreover, in cases where there is evidence in the record of one criteria for establishing disability, the lack of articulated reasons by the ALJ as to why there is no disability under the listing denotes a lack of substantial evidence in support of the decision, even where the conclusion may otherwise be justified by later recourse to the entire record.[21]

---

[16] *Isham v. Astrue*, No. 3:08-cv-423, 2010 WL 1957362 (E.D. Tenn. Jan. 13, 2010).

[17] *See*, ECF # 25 (Court Order); # 26 (claimant's brief); # 27 (Commissioner's brief).

[18] While *Isham* addressed the mental retardation listing at § 12.05(C) applicable to an adult claimant, the listing at § 112.05(D) applicable to a child is in relevant part identical.

[19] *Isham*, 2010 WL 1957362, at *6 (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)).

[20] *Id.* (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009)).

[21] *Id.*

This holding in *Isham* is consonant with the Sixth Circuit teaching in *Abbott v. Sullivan*, which states that the listing for mental retardation "differs from nearly all others in that it does not require satisfaction of the B criteria [of functional limitations] in all cases."[22] Specifically, as noted above, disability for mental retardation is established by (1) an IQ score between 60 and 70 plus (2) a physical or mental impairment imposing an additional and significant limitation of function; a requirement that does not involve consideration of the various domains of function set forth in the specified B criteria.

In this case, the Commissioner has not asserted that the ALJ has undertaken the analysis for mental retardation set forth above. Rather, the Commissioner argues that no such analysis as set out in *Isham* was required because the ALJ concluded that the full scale IQ score of 62 was invalid. Thus, without a valid IQ score under 70, the Commissioner asserts, the analysis prescribed in *Isham* is not triggered.[23]

In that regard, the Commissioner's contention that *Isham* is inapposite is unpersuasive. First, the Sixth Circuit teaches in *Abbott* that where more than one IQ score is derived from the test administered, such as here where there were verbal, performance and full scale IQ results, "the *lowest* of these is used in conjunction with listing 12.05."[24] Thus, if the ALJ were to address only one of AF's IQ scores, *Abbott* states that it should have been the lowest score, or the perception reasoning index score of 53. I note further that the validity of this

---

[22] *Abbott*, 905 F.2d at 924 (citing § 12.05).

[23] *See*, ECF # 27 at 3-4.

[24] *Abbott*, 905 F.2d at 925 (emphasis added).

-6-

score, as with each of the individual scores, was not specifically called into question anywhere in the record. Rather, the suggestion was made that, because there was a wide variance between the highest and the lowest individual scores, the disparity may have the effect of making the overall full scale score invalid as a representation. Most important, the individual score of 53 (or, indeed, the individual verbal score of 59) would, by itself, entitle AF under Subsection C to a finding of disability without the requirement of any additional limitation of function.

A discussion of AF's IQ score of 59, which was not conducted by the ALJ here, is important for the reasons put forward by the court in *Oberts v. Halter*.[25]  Where there is "vast and critical" disparity between IQ assessments, *Oberts* holds, the matter should be remanded for further findings, such as further testing or an explanation as to why one score is given more credence than another.[26]  The remand is particularly in order where there is plainly a "vast and critical" disparity among AF's IQ tests[27] and two of the individual IQ results are below 60, such that each would entitle the claimant to benefits on its own and without any further findings.[28]

---

[25] *Oberts v. Halter*, 134 F. Supp. 2d 1074 (E.D. Mo. 2001).

[26] *Id*. at 1087.

[27] In this case, as noted above, AF scored below 60 in two IQ tests, above 80 in another, and above 90 in yet another, a variance of over 30 points between high and low.

[28] *See*, *Oberts*, 134 F. Supp. 2d at 1074.

This result is fully consonant with *Abbott*'s rubric that it is the lowest IQ that is to be used where more than one are derived from a single test. And it is supported by *Isham*, which requires, as a mandatory procedure, that the ALJ articulate reasons why a claimant with IQ scores under 70 does not meet or equal the listing for mental retardation. Again, this requirement is more sharply in focus where the IQ score at issue is below 60 and no further showing of limitation of function would be needed.

I am aware that here, unlike *Isham*, AF had not argued in his claim he was mentally retarded, and so did not alert the ALJ as to the need for any discussion concerning whether he met the listing in this respect. Nevertheless, I interpret *Isham* – and by extension *Abbott* – as setting out a bright-line rule that, where an IQ score below 70 exists in the record, and such score being the lowest of the scores derived from a single test, the ALJ must provide a specific analysis under the mental retardation listing as to whether the claimant is mentally retarded or not, regardless of how the claim was argued, with failure to do so requiring remand.

## Conclusion

For the above reasons, the decision of the Commissioner denying the application for children's supplemental security income is reversed, and the case is remanded for further proceedings consistent with this decision.

For purposes of any potential application for attorney's fees under the Equal Access to Justice Act,[29] the Court concludes that the position of the Commissioner was substantially justified.

IT IS SO ORDERED.

Dated: March 22, 2011                                s/ William H. Baughman, Jr.
                                                    United States Magistrate Judge

---

[29] 28 U.S.C. § 2412(d)(1)(A).